**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

FILED
ASHEVILLE, N.C.
DEC - 8 2011
U.S. DISTRICT COURT
W. DIST. OF N.C.

| | | |
|---|---|---|
| TODD WILSON SHORT<br><br>Plaintiff,<br><br>**vs.**<br><br>STEVEN D. COGBURN individually and in his official capacity as Clerk of Superior Court of the North Carolina Unified Court System, Buncombe County; TAMMY C. CASE individually and in her official capacity as Assistant Clerk of Superior Court of the North Carolina Unified Court System, Buncombe County; SUSAN DOTSON SMITH, individually and in her official capacity as Assistant Clerk of Superior Court of the North Carolina Unified Court System, Buncombe County; CYNTHIA L. ALLEMAN, individually and in her official capacity as Guardian Ad Litem, for the North Carolina Unified Court System, Buncombe County; JOHN DOE I, individually and in his/her official capacity as state actor for the North Carolina Unified Court System, Buncombe County; North Carolina; and DOES 1 THROUGH 3,<br><br>Defendants. | ) | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE** AND **DECLARATORY RELIEF FOR CIVIL RIGHTS VIOLATIONS**<br><br>**(42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Civil Action No. 1:11-CV-00304-MR-DLH** |

## NATURE OF THE CASE

1. This action to vindicate the constitutional and civil rights of Plaintiff, TODD WILSON SHORT (hereinafter "Plaintiff"), arises from discretionary decisions, duties, and practices embraced and implemented by Defendant STEVEN D. COGBURN (hereinafter "Cogburn"), Defendant Tammy C. Case (hereinafter "Case"), Defendant SUSAN DOTSON SMITH (hereinafter "Smith"), Defendant CYNTHIA L. ALLEMAN (hereinafter "Alleman")

and Defendants DOES 1 through 3 (hereinafter "Does"), who impeded Plaintiff's ability to lawfully exercise his right to (1) challenge the validity of his guardianship; (2) has his competency restored forthwith; and (3) petition government (North Carolina Unified Court System (hereinafter "State Court")) for redress of grievances. Defendants COGBURN, CASE AND SMITH used their positions as a judicial officials as Clerks of Superior Court in the State Court, Buncombe County, to carry out acts that were not judicial nor within their scope of authority. Defendant ALLEMAN, appointed by Defendant SMITH, as Plaintiff's guardian ad litem, step outside her judicial role as an advocate and data-gatherer for Plaintiff. Instead, Defendant ALLEMAN, in concert and in a conspiratorial modus, aided and abetted Defendants' COGBURN, CASE, SMITH and DOES in violating the Plaintiff's constitutional and civil rights. Defendants have, and continue to impede the Plaintiff's rights among other things, to enjoy true life, liberty, and the pursuit of happiness.

2. Plaintiff seeks Damages, Injunctive and Declaratory Relief enjoining Defendants and their agents, servants and employees and those acting in active concert and with actual notice thereof, from enforcing discretionary decisions (hereinafter collectively "Policies"), promulgated, implemented and enforced by Defendants, and their agents, servants and employees and those acting in active concert, and applied against Plaintiff, on grounds that the policies complained of herein are unconstitutional in their application to the case at bar (as applied challenge) by prohibiting Plaintiff from exercising his right to petition, due process and equal protection.

3. Plaintiff prays for Declaratory Judgment to determine the parties' rights and/or obligations regarding the alleged violations of Plaintiff's constitutional freedoms and civil rights. Plaintiff further request Declaratory Judgment to determine the constitutionality of the

Defendants' actions (as applied challenge) in denying Plaintiff the opportunity to exercise his right to petition, due process and equal protection in challenging his guardianship, especially when those appointed by the State Court, willfully, wantonly, maliciously and with deliberate indifference fail to protect Plaintiff without unequal application of the laws and to declare the Defendants' challenged actions unconstitutional as applied (as applied challenge).

4. Plaintiff prays for injunctive relief to prevent Defendants from engaging in unlawful activities to impede Plaintiff's ability to lawfully exercise his rights to petition in future the thereby protecting Plaintiff and others in the state of North Carolina. Plaintiff prays for damages because the individual Defendant, Cogburn, Case, Smith, Alleman and Doe 1 through 3, violated clearly established law, was knowledgeable of the constitutional and civil rights being violated, and acted against Plaintiff's rights despite this knowledge. An award of such damages is directly and proximately related to Defendants' violations of Plaintiff's rights. Because Defendants' Cogburn, Case, Smith, Alleman and Doe 1 through 3 acted willfully, wantonly, maliciously and with deliberate indifference, they are liable for suit their official and individual capacity. Plaintiff further seeks punitive damages against Defendant Cogburn, Case, Smith, Alleman and Does 1 through 3 to assure that no other person is wrongfully treated. Because Defendants Cogburn, Case, Smith, Alleman and Doe 1 through 3 acted willfully, wantonly, maliciously and with deliberated indifference, they should be sanctioned in order to prevent them from acting similarly in the future against others. An actual controversy exists between the parties involving substantial constitutional and civil rights issues because Defendants' policies, promulgated and practices violated Plaintiff's constitutional and civil rights and these violations are continuing until this Court enjoins the unlawful impediment of Plaintiff's ability to peacefully and lawfully exercise his Right to Petition without unequal application of the law.

5. Plaintiff prays for Declaratory Judgment to determine the constitutionality of the enforcement of policies, promulgated and practices which have been applied against Plaintiff to deny Plaintiff the opportunity to freely exercise his constitutional rights and to declare that the application of Defendant Cogburn, Case, Smith, Alleman and Doe 1 through 3 policies, promulgated and practices against Plaintiff was unconstitutional as a direct violation of Plaintiff's rights and violation of the freedoms protected by the First and Fourteenth Amendments to the United States Constitution, as well as Article 1, §§ 18, 19, and 21, of the North Carolina Constitution, and for an award of such actual and consequential damages as are directly and proximately caused by the Defendants' violations of the Plaintiff's rights past enforcement and/or nominal damages, including the constitutional violations and damages in tort.

6. An actual controversy exists between the parties involving substantial constitutional issues in that the Defendants' policies, promulgated, practices and actions were applied against Plaintiff so as to violate Plaintiff's rights to Petition for a Governmental Redress of Grievance, Due Process and Equal Protection guaranteed under the First and Fourteenth Amendments to the United States Constitution, as well as Article 1, §§ 18, 19 and 21, of the North Carolina Constitution, and further caused Plaintiff to refrain from fulfilling his rights thereby causing Plaintiff to suffer actual damages and nominal damages.

## JURISDICTION

7. Plaintiff brings this civil rights action pursuant to 42 U.S.C. Sections § 1983 due to deprivations of Plaintiff's rights secured by the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as Article 1 §§ 18, 19 and 21 of the North Carolina Constitution, which authorizes this Court to award damages and cost.

8. This Court is authorized to grant Plaintiff's prayer for relief and to award Plaintiff's costs in this action for violations of Plaintiff's constitutional and civil rights, including a reasonable attorney fee, under Title 42 U.S.C. § 1367(a).

9. This Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, Title 28 U.S.C. §§ 2201 and 2202 (1988), implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in the Western District of North Carolina and may be found and served in the Western District of North Carolina. Venue is proper for the additional reasons that at all times mentioned herein the events took place within the Western District of North Carolina and because each and all of the acts alleged herein were done by Defendants, under the color and pretense of the statutes, ordinances, regulations, customs, and uses of the North Carolina Unified Court.

## PARTIES

11. Plaintiff, TODD WILSON SHORT, is and was at all times relevant herein, an individual and resident of Asheville, North Carolina.

12. Defendant, STEVEN D. COGBURN, is a Clerk of Superior Court, for the North Carolina Unified Court System, Buncombe County and pursuant to North Carolina Statute can be sued for negligence in administering his official duties, and was at all times relevant herein, acting outside the course and scope of authority and under color of State law. Defendant STEVEN D. COGBURN is sued in his individual capacity for prospective and injunctive relief

and damages, who on information and belief, resides within the jurisdiction of this Court and is subject to litigation in this venue.

13. Defendant, TAMMY C. CASE, is an Assistant Clerk of Superior Court, for the North Carolina Unified Court System, Buncombe County and pursuant to North Carolina Statute can be sued for negligence in administering her official duties, and was at all times relevant herein, acting outside the course and scope of authority and under color of State law. Defendant TAMMY C. CASE is sued in her individual capacity for prospective and injunctive relief and damages, who on information and belief, resides within the jurisdiction of this Court and is subject to litigation in this venue.

14. Defendant, SUSAN DOTSON SMITH, is an Assistant Clerk of Superior Court, for the North Carolina Unified Court System, Buncombe County and pursuant to North Carolina Statute can be sued for negligence in administering her official duties, and was at all times relevant herein, acting outside the course and scope of authority and under color of State law. Defendant SUSAN DOTSON SMITH is sued in her individual capacity for prospective and injunctive relief and damages, who on information and belief, resides within the jurisdiction of this Court and is subject to litigation in this venue.

15. Defendant, CYNTHIA L. ALLEMAN, is an attorney, acting as Guardian Ad. Litem, for the North Carolina Unified Court System, Buncombe County and pursuant to North Carolina Statute can be sued for negligence in administering her official duties, and was at all times relevant herein, acting outside the course and scope of authority and under color of State law. Defendant CYNTHIA L. ALLEMAN is sued in her individual capacity for prospective and injunctive relief and damages, who on information and belief, resides within the jurisdiction of this Court and is subject to litigation in this venue.

16. Defendants, DOE 1 through 3, who on information and belief, were acting in concert with the other Defendants' and pursuant to North Carolina Statue can be sued for negligence in administering their duties, and were at all times relevant herein, acting outside the course and scope of authority and under color of State law. Defendants' DOE 1 through 3, are sued in their individual capacity for prospective and injunctive relief and damages, who on information and belief, reside within the jurisdiction of this Court and are subject to litigation in this venue.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

17. On December 19, 2002, or thereabouts, the General Court of Justice Superior Court Division, located in Buncombe County, part of the North Carolina Unified Court System, adjudicated Plaintiff incompetent pursuant to North Carolina General Statue 35A. The adjudication of incompetency stripped Plaintiff of his right to life, liberty and pursuit of happiness, and assigned these rights to his guardians.

18. Plaintiff, pursuant to North Carolina General Statue § 35A-1115 timely appealed the Court's ruling adjudicating him incompetent, file number: 3CV00162, within the State Court. Pursuant to this statue, the Court's ruling was to be heard by the Superior Court de novo and thence to the Court of Appeals. However, Plaintiff's appeal was disregarded by the Clerk of Superior and never forwarded to the Superior Court. As of the filing of this complaint, the Plaintiff's appeal has never been ruled on.

19. A great deal of controversy surrounded the Plaintiff at the time he was adjudicated incompetent. Plaintiff at the time was under investigation by the Department of Justice for possible mail and wire fraud.

20. In May 2003, the Federal Bureau of Investigations on charges of mail and wire fraud arrested Plaintiff and approximately two years later, Plaintiff was convicted of these charges after entering into a plea agreement with the United States of America. Plaintiff was sentenced in the United States District Court, for the Western District of North Carolina to 120 months of incarceration.

21. From May 2003 to November 2010, Plaintiff, still deemed incompetent by the State Court was still afforded the protection from the State Court pursuant to North Carolina General Statue 35A. Yet, Plaintiff alleged as early as January 2003 that those who were to protect his best interest where in fact engaging in unlawful conduct, which was not in accordance with North Carolina General Statue 35A.

22. During this time, Plaintiff alleged that former Clerk of Superior Court, Richard Schumacher, in concert with David E. Matney III, legal counsel to Lawrence E. Thompson III, Plaintiff's general guardian at the time, intentionally and unlawfully deposed of approximately $250K worth of Plaintiff's assets.

23. During his incarceration, Plaintiff attempted to address issues, which he felt, were questionable in reference to his guardianship. Plaintiff not only attempted to address these concerns directly with the State Court, but also with his appointed guardian (s). Plaintiff also attempted to has his competency restored while incarcerated. Plaintiff has always maintained he was never incompetent. However, the State Court refused to restore Plaintiff competency claiming such could only be done by hearing of which Plaintiff was required by law to attend.

24. On or about November 16, 2010, Plaintiff was released from federal custody and immediately moved the State Court for restoration of his competency.

25. On November 30, 2010, or thereabouts, Plaintiff filed a Verified Petition for the Restoration of the Ward to Competency with the Clerk's Office for Superior Court in Buncombe County, and with this motion, Plaintiff also filed a Motion for Appointment of Guardian Ad Litem, and a Motion for a Multidisciplinary Evaluation.

26. On January 21, 2011, or thereabouts, Deborah Reed, LCSW and Barbara J. Bailey, M.A. both of Western Highland Network, located in Asheville, North Carolina conducted the multidisciplinary evaluation on Plaintiff. Deborah Reed, LCSW and Barbara J. Bailey, M.A. in the multidisciplinary evaluation so ordered by Defendant Case,( which can be found on page 10 and 11 of the multidisciplinary evaluation (see attached exhibit "A"), which stated the following:

> *"Plaintiff was release from Federal Prison in November 2010 and since then has been solely responsible for his own care, comfort, and maintenance, and has been responsible for arranging for his needs, training, education, employment, rehabilitation or habilitation."*
>
> *"Plaintiff has also been responsible for his clothing, furniture, vehicle, and other personal effects. In addition, Plaintiff has had to arrange for his own medical, legal, and psychological treatment and service."*
>
> *"Plaintiff is attending college full-time at Asheville-Buncombe Technical Community College."*
>
> *"Plaintiff has been receiving mental health counseling for approximately 8 years, and continues to receive treatment today ResCare and has been stable during this time and is currently stable today."*
>
> *"Plaintiff has successfully had his driving privileges restored, originally revoked due to his adjudication of incompetency."*
>
> ***(Brief Summary):*** *"Overall Adaptive functioning appears adequate compared to the average person. In terms of Adaptive Behavior, Receptive and Expressive communication are intact. Mr. Short expressed realistic plans for his future. He demonstrated good concentration and memory skills, and an excellent understanding of finances. He requires medication to treat his chronic mental health issues, but Mr. Short had demonstrated he is able to comprehend and supervise his medication needs. Mr. Short can certainly express his wishes adequately in terms of where he wants to live."*

***(Competency):*** *"The results of this evaluation indicate that this 50-year-old gentleman has adequate cognitive functioning including short and long term memory, ability to learn new information and no problems with planning, organizing, sequencing, abstraction. He has the ability to address and supervise medical needs by himself in a consistent manner. He has adequate ability to access the necessary help if he is in serious medical need."*

***(Recommendation):*** *"There appears to be a valid reason for a re3storation of Competency. It is my opinion that Mr. Short is competent for legal purposes with regard to care of his personal/social/financial/legal, or medical issues."* *(Conclusion): "All parties in this multidisciplinary evaluation for Guardianship are in agreement that restoration of competency for Mr. Todd W. Short is in his best interest, with the following caveats:"*

*"Mr. Short has been in treatment for 8 years, and has lived in a structured, regulated setting. His medication has always been available, and he has not had to provide for himself or manage his finances. Mr. Short has had limited opportunity for drug and alcohol abuse. He knows he is still under the jurisdiction of the Court. Mr. Short appears to suffer from bipolar disorder and Antisocial Personality Disorder (APD). The extent to which APD is a recognizable mental illness is questionable. Most individuals with APD are best treated with behavioral management, i.e. prison. Sometimes, the individual will recognize that the behavior in not effective or productive anymore. This may be the case with Mr. Short who reported he is ""burned out"" He is currently taking his antipsychotic medication for his current diagnosis of bipolar disorder, but there is a question of him stopping it and relapsing into emotional dysregulation. Another problem involves Mr. Short's history of chronic, substantial multiple drug abuse and frequent relapses. Stopping his, medication could lead over time to a relapse. It is not possible to sort out these issues in a short time."*

*"Obviously, Mr. Short can function well within the bonds of the Court system, but it unclear what Mr. Short is like without his medication. We do have evidence of what he was like before his extended treatment. While Mr. Short is on supervised probation, if he remains on his medication, there will be ample opportunity to discern Mr. Short's future course."*

27. Plaintiff addressed the concerns raised by Deborah Reed, LCSW and Barbara J. Bailey, M.A., in the multidisciplinary evaluation with Defendants at the time as follows:

*"Deborah Reed and Barbara J. Bailey can only speculate what life was like for Ward in prison for 8 years, and though it may appear to be a structured environment to a person on the outside. It is in fact a brutal, dangerous, and highly stressful atmosphere, where one lives in constant fear."*

*"Deborah Reed and Barbara J. Bailey indicated that my medication was always available, but what they failed to take into consideration is that Ward took his medication on his own accord and is under no obligation to take such medication should Ward elect."*

*"Deborah Reed and Barbara J. Bailey also imply that Ward did not have to provide for himself or manage his finances. On the contrary, Ward had to manage and budget his income, pay towards his restitution, and work full-time while in prison."*

*"Deborah Reed and Barbara J. Bailey also imply that Ward had limited opportunity for drug and alcohol abuse while in prison, when in fact drugs and alcohol are readily available and a major problem within the prison system. Ward would like to point out to the Court that he attended college while in prison, and is currently attending Asheville-Buncombe Technical Community College full-time. Ward also received Certificates of Achievements in Introduction to Spanish, Personal Financial Management, Fundamentals of Real Estate Investing, Consumer Credit, Business Plans & Financing Strategies, Typing and Key Boarding, Job & Career Skills. The defendant also received a Certificate of Completion in Anger Management."*

*"Ward would also like to bring to the Court's attention that Ward maintained a record of clear conduct his entire 7 ½ years while in prison, and has continued to maintain such clear conduct record today, clearly demonstrating Ward has changed and is continuing to make improvement in his life daily."*

28. On or about January 27, 2011, the State Court held a hearing on Plaintiff's petition for restoration of his competency. Plaintiff adamantly disagreed with the State Court that Plaintiff was required to wait one year from his release date from federal custody before he could seek full restoration of his competency. Plaintiff nevertheless allowed the State Courts to change the Plaintiff's guardianship to a limited guardianship, only so that the State Court would grant Plaintiff the right to have his driving privileges reinstated, suspended upon his adjudication of incompetency.

29. From February 6, 2011 through March 31, 2011, Plaintiff through letters to Kara Peterson, his Guardian Representative of the Person, Defendant Alleman, and Defendant Case Plaintiff again raise concerns towards the mismanagement of his estate in 2003.

30. Defendant Case refused to address Plaintiff's allegation that the former assistant clerk of court and former guardians had unlawfully mismanaged his estate, which thereby cause significant monetary damages to Plaintiff. Plaintiff then question why Defendant Case was at least not making any inquiries regarding possible damages caused to Plaintiff's estate.

31. On March 29, 2011, Plaintiff requested informally via letter to Defendant Case that the Court again appoint a Guardian of Estate to protect Plaintiff's interest.

32. Defendant Case acting in her official capacity as Assistant Clerk of Superior Court, informed Hope for the Future, Inc., Plaintiff's current guardian of the person, that if the need for the appointment of a guardian of the estate was needed that a motion should be filed by Hope for the Future, Inc.

33. On June 27, 2011, or thereabouts, Kara Peterson, Guardian Representative for Hope for the Future, Inc. and attorney Victor Garlock met with Plaintiff to ascertain whether Plaintiff had been possibly damaged by previous guardians of Plaintiff's estate and by the former Assistant Clerk of Superior Court in Buncombe County.

34. It was determined during this meeting by attorney Victor Garlock that the former Assistant Clerk of Court may not have performed his official duties in accordance with North Carolina General Statue 35A, and that the former guardians of Plaintiff's estate had in fact caused possible damages.

35. The attorney also stated during this meeting that since Lawrence E. Thompson III, had not filed an inventory as required by law, that Plaintiff would have a difficult time proving damages.

36. In June 2011, after Plaintiff was adamant about the State Court appointing Plaintiff a guardian of the estate who would be the proper person to address whether Plaintiff's estate had

been damaged by the former assistant clerk or court and Plaintiff's former general guardian and co-guardian of the estate. The State Court finally appointed attorney Victor Garlock, guardian of the estate for Plaintiff, and requested he examine whether Plaintiff's allegations had merit.

37. Since Hope for the Future, Inc. failed in their duty to notify the Court of such material changes to Plaintiff's estate. On August 2, 2011, Plaintiff filed a motion to modify his guardianship which would allow him to have all powers associated with that of guardian of the estate in accordance with North Carolina G.S. § 35A-1251.

38. On August 4, 2011, or thereabouts, Defendant Case contacted Plaintiff by telephone and advised Plaintiff that his Motion for Modification of Guardianship filed on August 2, 2011, was not permitted. Defendant Case stated that such would need to be filed by Hope for the Future, Inc.

39. On August 5, 2011, or thereabouts, Defendant Case again contacted Plaintiff by telephone and advised him that she had met Defendant Cogburn, Clerk of Superior Court, Buncombe County and that they had determined that a Guardian of the Estate would be appointed. Attorney Victor Garlock was then appointed Guardian of Estate for Plaintiff.

40. On September 6, 2011, or thereabouts, Defendant issued a standing verbal Order to the other Assistant Clerks of Court, in the North Carolina Unified Court System, that they were not permitted to accept any filings and/or pleadings filed directly from the Plaintiff. Defendant Case refused to issue an actual ruling or enter an Order into record regarding her decision to restrict Plaintiff's access to the Courts.

41. On October 6, 2011, or thereabouts, Victor Garlock notified Defendant Case, that based upon information available, it was the Guardian of the Estates' opinion that Plaintiff had a potential claim for damages resulting from his loss of property base on Plaintiff's claim his prior

guardians of his estate misappropriated or failed to properly safeguard significant amounts of Plaintiff's personal property, and that the prior Clerk of Court failed to properly supervised his prior guardians, which failure contributed to Plaintiff's loss.

42. Mr. Garlock issued a letter to the State Court which stated in part;

> *"Mr. Short maintains that the prior guardians of his estate misappropriated or failed to properly safeguard significant amounts of his personal property. He also claims that the Clerk of Court failed to properly supervise his prior guardians, which failure contributed to his losses. Mr. Short has provided me with detailed information in support of his claim.*
>
> *Based upon the information available, it is my opinion that Mr. Short has a potential claim for damages resulting from his loss of personal property".*

43. On October 6, 2011, when the Guardian of the Estate notified the Defendant Case that Plaintiff's estate had been potentially damage in a significant amount of monetary value, no action has been taken by Defendant Case to further address the matter. Nor did the Plaintiff's Guardian of the Estate take action to protect the best interest of Plaintiff's estate as mandated by North Carolina G.S. § 35A.

44. Plaintiff, not be protecting under North Carolina G.S. § 35A again immediately sought restoration of his competency so that he can protect his own interest since the Defendant Case and those appointment to protect Plaintiff's best interest have negligently failed to do so.

45. In later part of October 2011, or thereabouts the Plaintiff again questioned all parties, directly and/or indirectly involved in Plaintiff's guardianship whether his adjudication of incompetency was even valid, and whether the State Court had a legal right to deny Plaintiff his right to proceed with a full restoration hearing.

46. On October 12, 2011, or thereabouts, Robyn Morris, Plaintiff's sister and interested party caused to be filed a Motion in the Cause for Continuance on the guardian of the estates motion for restoration of Plaintiff's competency filed on October 6, 2011, or thereabouts.

47. On October 27, 2011, Victor Garlock, Plaintiff's Guardian of the Estate filed with the Court a motion to continue and appoint a guardian ad litem.

48. On October 27, 2011, Defendant Smith acting on Mr. Garlock's motion to continue and appoint guardian ad litem entered an Order continuing Plaintiff's restoration hearing and appointed Defendant Alleman Plaintiff's guardian ad litem.

49. On November 1, 2011, Plaintiff filed with the Court a verified motion to dismiss Mr. Garlock's motion to restore the competency of Plaintiff citing Mr. Garlock's motion was defective in service of process, nor properly served on the Plaintiff.

50. On November 1, 2011, Plaintiff filed with the Court a verified petition for restoration of competency of the Plaintiff. The Plaintiff also requested a jury trial and the appointment of a guardian ad litem.

51. On November 2, 2011, the Plaintiff attempted to file a motion to the Senior Superior Court Judge, Honorable Allen Thornburg requesting the Clerk's office be compelled to rule on motions before the Clerk's office which were previously filed by the Plaintiff and Ms. Morris, interested party.

52. While Plaintiff attempted to file the Motion to Compel, Defendant Cogburn confronted the Plaintiff in a hostile and intimidating manner, in front of court personnel. Cogburn advised the Plaintiff he was not permitted to file any more motions and/or pleadings, and forbid the Plaintiff from coming to the Courthouse any more.

53. On November 2, 2011, the Plaintiff wrote a letter to the Senior Superior Court Judge, Honorable Allen Thornburg advising him that the Clerk's office was denying the Plaintiff's right to access to the Courts. The Plaintiff also enclosed with the letter to Judge Thornburg the Motion to Compel that Plaintiff had attempted to file the previous day.

54. On November 4, 2011, or thereabouts, Plaintiff meant with his guardian ad litem Defendant Alleman, expressed his concerns regarding the suppression of his constitutional and civil rights and advised Defendant Alleman Plaintiff was requesting a jury trial. The Plaintiff also informed Defendant Alleman that the Plaintiff had filed several motions, which were before the Court.

55. On November 4, 2011, or thereabouts, Plaintiff issued an email to Defendant Alleman, his guardian of the estate, and his guardian of the person. In the email, the Plaintiff again tried to reach a compromise, acceptable to all parties, as to an informal resolution to the immediate restore the Plaintiff's competency.

56. Based on an email Defendant Alleman transmitted to Ms. Morris of November 7, 2011. Ms. Morris was under the impression that possibly Defendant Alleman was attempting to stall the Plaintiff's restoration hearing.

57. On November 9, 2011, Plaintiff filed this action, as he believes his constitutional and civil rights had, and were continually being violated by the Defendants.

58. On November 28, 2011, Defendant Alleman issued an email to several people, possibly including the Superior Court judge, in the State Court, now assigned to administer the Plaintiff's guardianship proceeding. Defendant Alleman's email, which was defamatory and non-factual, implied the Plaintiff was currently operating under a delusional disorder of a persecutory type and that the Plaintiff had not taken his medication or not taking the medication property.

59. Defendant Alleman had no supporting medical evidence, medial testimony or layperson testimony from anyone who had dealt with the Plaintiff on a daily basis for the past year that would support her medical diagnosis that the Plaintiff was delusional, nor not taking his medication.

60. On the contrary, strong medical evidence available on the Plaintiff supports, the fact the Plaintiff is competent, and that he is no way operating under a delusional disorder. There is also medical documentation that Plaintiff has maintained a constant and uninterrupted regime of psychotropic medication for over eight years.

61. On November 29, 2011, or thereabouts, Plaintiff, acting upon his own, sought and obtained a comprehensive psychological evaluation, which included psychological testing, something that was not done during the multidisciplinary evaluation conducted on January 21, 2011.

62. This comprehensive psychological evaluation and testing was administered on the Plaintiff on November 30, 2011 and December 1, 2011 by Dr. Stephen T. DeBerry Ph.D., FAClinP, a qualified psychologist and expert witness to determine whether Plaintiff was of sound mind, competent, and whether Plaintiff was operating under a delusional disorder. Dr. DeBerry concluded the Plaintiff is competent, not delusional and is full control of his faculties.

63. On December 6, 2011, Superior Court Judge, the Honorable Sharron Barnett conducted a hearing on motions before the State Court pertaining to Plaintiff's guardianship. During the lengthy hearing Defendant Alleman, attempted to discredit Dr. DeBerry as a qualified medical witness. Defendant Alleman did everything in her power to make implied statements regarding the Plaintiff that were again defamatory and slanderous, and unsupported by any factual medical evidence.

64. Honorable Sharron Barnett order the Plaintiff to submit to one more independent evaluation and dismissed Defendant Alleman at Plaintiff's guardian ad litem, and scheduled a status hearing for January 8, 2012 or thereabouts.

65. From December 6, 2011 through December 7, 2011, Plaintiff has spoken with Dr. DeBerry, Barbara Baily (one of the medical professional who administered the multidisciplinary evaluation on the Plaintiff in January 2011) and Joel Misler, a licensed Clinical/CTS and the Plaintiff's therapist. All are in agreement the Plaintiff is competent, not delusional and should not be subjected to a guardianship.

66. Plaintiff acknowledges to this Court that he does have some mental health issues, which this Court may be well aware. But, such mental health challenges do not interfere with Plaintiff's ability to make rational decisions or take care of himself and his personal needs requiring he be place under a guardianship.

67. The essential purpose of guardianship for an incapacitated adult is to replace, in whole or in part, the ward's authority to make personal decisions with the guardian's authority to make decisions regarding the ward's personal affairs, financial affairs, or both when the ward lacks sufficient mental capacity to make those decisions. See G.S. 35A-1201(a)(3).

68. Guardianship, however, should seek to preserve for an incapacitated ward the opportunity to make those decisions and exercise those rights that are within the ward's comprehension and judgment, allowing for the possibility of error to the same degree as is allowed to competent adults. G.S. 35A-1201(a)(5). And even when a guardian has been appointed for an incapacitated ward, the ward should be allowed to participate, to the maximum extent of his or her capabilities, in all decisions that will affect him or her. G.S. 35A-1201(a)(5).

69. The concepts of personal autonomy and self-determination hold that all

70. "competent" adults have, or should have, the right to make their own decisions regarding their personal affairs. These concepts, in turn, rest on at least two assumptions: absent a contrary and legitimate social or governmental interest, "competent" adults should be free to make their own decisions regarding their personal affairs; absent proof that an adult lacks sufficient mental capacity to make personal decisions, an adult has the capacity to make his or her own decisions.

71. Both of these assumptions are recognized, explicitly or implicitly, by the common law, case law, statutory law, and constitutional law.

72. The United States Supreme Court has held that a competent adult has a constitutionally-protected, but not absolute, interest in making certain types of important, intimate, or personal decisions, including decisions regarding the refusal of medical treatment.

73. The law also presumes that, in the absence of proof to the contrary, all adults have sufficient mental capacity to make their own decisions regarding their personal affairs.

74. This presumption, however, may be rebutted by sufficient, competent evidence of mental incapacity in a legal proceeding, including a guardianship proceeding pursuant to G.S. Ch. 35A, in which an adult's mental capacity is at issue.

75. North Carolina General Statue § 35A, clearly defines when an individual needs to be under the care of a guardianship as follows:

> *"§ 35A-1101. Definition - **"Incompetent adult"** means an adult or emancipated minor **who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property** whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.*
>
> *Whether the clerk or the jury, finds by **clear, cogent, and convincing evidence that the respondent is incompetent**, the clerk shall enter an order adjudicating the respondent incompetent."*

76. Upon information and belief the Defendants' have absolutely no medical evidence or testimony to support their position in denying the Plaintiff his right to have his competency restored by on the definition of North Carolina General Statue § 35A. The Defendants' have continued to force the State guardianship upon the Plaintiff in an unlawfully and possibly illegal matter, willfully, wantonly, maliciously and with deliberate indifference for the purpose to punish the Plaintiff for attempting to petition the Court for the grievous actions taken by several individuals who have been appointed to handle the Plaintiff's guardianship, including officials of the State Court. Their actions have deprive the Plaintiff of his basic constitutional rights of life, liberty and the pursuit of happiness afforded to all citizens of the United States of America.

77. The Plaintiff has done everything within his power to address the grievous nature of the guardianship, but had no other recourse but to file this action to address the violations of his constitutional and civil rights by the Defendants.

## GENERAL ALLEGATIONS

78. Upon information and belief, Defendants know or should have known as well as the Plaintiff's guardians based on multidisciplinary evaluation submitted to the Defendants in February 2011 that Plaintiff was competent. The Defendants who had a duty to act and restore the Plaintiffs competency but negligently prevented the restoration to move forward in accordance with North Carolina General Statue § 35A, knowing such would violate the Plaintiff's constitutional and civil rights and further deprived Plaintiff of his life, liberty and pursuit of happiness.

79. Upon information and belief, Defendants knew or should have known the Plaintiff was being subjected to an unlawful guardianship at this point.

80. The Defendants' had a duty of care to protect the Plaintiff's best interest and at the very least once this medical opinion was rendered through the multidisciplinary evaluation Defendants' Cogburn, Case and Smith, as judicial officials had a duty to act upon their own to immediately proceed to restore Plaintiff's competency, yet they refused to do so.

81. The Defendants acted willfully, wantonly, maliciously and with deliberate indifference to violate the Plaintiff's constitutional and civil rights alleged herein have caused, and will continue to cause, Plaintiff to suffer extreme hardship, actual and impending, irreparable injury and damages.

82. Plaintiff currently suffers from the denial of rights guaranteed by the United States and North Carolina Constitutions because of Defendants' actions taken under color of State law pursuant to Defendants' past and continued enforcement of the Plaintiff's guardianship through their policies, polices, customs, practices and actions and omissions as interpreted and applied against Plaintiff.

83. The future chilling of Plaintiff's rights is an absolute certainty unless and until this court grants the injunctive and declaratory relief requested herein.

84. Defendants and/or Defendants' agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees had personal knowledge of the events described herein.

85. Defendants and/or Defendants' agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees did, with the purpose and intent of willfully, knowingly and with callous and deliberate indifference, deprive Plaintiff of rights protected by the United States and North Carolina Constitution.

86. Defendant Cogburn failed to properly and/or adequately train and/or supervise Defendants Case, Smith and Does 1 through 3 which was the direct and proximate cause of the violation of Plaintiff's rights.

87. Defendant then willfully, knowingly and with callous and deliberate indifference joined in concert with Defendants Case, Smith and Doe 1 through 3, which was the direct and proximate cause of the violation of Plaintiff's rights.

88. As a direct and proximate result of Defendants and/or Defendants' agents', servants', employees', licensees', guarantees', indemnitors', invitees', or assignees' violations of Plaintiff's rights, Defendants and/or Defendants' agents', servants', employees', licensees', guarantees', indemnitors', invitees', or assignees' are liable to Plaintiff for damages.

89. As a direct and proximate cause of Defendants and/or Defendants' agents', servants', employees', licensees', guarantees', indemnitors', invitees', or assignees' violations of Plaintiff's rights, Defendants and/or Defendants' agents', servants', employees', licensees', guarantees', indemnitors', invitees', or assignees' are liable to Plaintiffs for attorney's fees and costs incurred in representing Plaintiff in this action should Plaintiff retain counsel.

90. Defendants knew or should have known that their actions were unconstitutional and outside of the judicial duties, yet operated as such under color of state law and that doing so would inflict a blatant violation of Plaintiff's First, Fifth and Fourteenth Amendment rights to truly enjoy life, liberty and the pursuit of happiness, right to petition, due process and equal protection, as well as Plaintiff's rights under Article 1 §§ 18, 19 and 21 of the North Carolina Constitution.

91. Upon information and belief, Defendants' Cogburn, Case and Smith were using their official position and personal influence in a conspiratorially manner to influence Defendant

Alleman to aid and abet them in their continual efforts to deprive Plaintiff of his constitutional and civil rights.

92. Upon information and belief, Defendant Alleman's defamatory email sent to multiple parties on November 28, 2011, including the Superior Court Judge now handling the Plaintiff's guardianship proceeding implying the Plaintiff was operating under a delusional disorder, nor taking his medications, etc. Upon information and belief was done so for two reasons. (1) to poison the well in an attempt to fetter the opinion and ruling (s) of the Superior Court Judge in the State Court; and (2) to attempt to discredit and aid in defense of the Defendants' Cogburn, Case and Smith and the Does in this cause of action.

93. Upon information and belief, the Defendants have and continue too systematically impede the Plaintiff from exercising his constitutional, civil rights, and thereby further depriving Plaintiff of Due Process and Equal Protection of the law guaranteed by the United States Constitution and the North Carolina Constitution.

94. Upon information and belief, Defendants' Cogburn, Case and Smith, and possibly the Doe Defendants have conspiratorially communicated with each other directly and/or indirect through their agents in an attempt to strategize how to further impede the Plaintiff's constitutional and civil rights. More alarmingly upon information and belief, they have engaged Defendant Alleman in their conspiratorially actions, to aid and abet in helping to establish a possible defense to cause of action by having Defendant Alleman imply the Plaintiff is operating under a delusional disorder, absent any medical evidence.

95. Plaintiff has and will continue to suffer actual damages as a result of Defendants' past and continued denial of immediate and full restoration of Plaintiff to competency.

96. There is a great likelihood that Plaintiff will prevail on the merits in this case because the Defendants' actions, constitute an unconstitutional infringement of Plaintiff's First, Fifth and Fourteenth Amendment rights to free speech, right to petition, due process and equal protection, and the Defendants' actions violated Plaintiff's rights under Article 1 §§ 18, 19 and 21 of the North Carolina Constitution.

97. The Defendants' past and continued actions has caused irreparable and great and immediate harm to Plaintiff.

98. The chilling of Plaintiff's rights to life, liberty and the pursuit of happiness, free speech, right to petition, due process and equal protection has caused Plaintiff to forfeit his rights thereby causing Plaintiff to suffer actual and nominal damages.

99. Plaintiff has complied with all conditions precedent before filing this Verified Complaint.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH

### THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

100. Plaintiff hereby reincorporates and adopts each and every allegation in preceding paragraphs numbered 1 through 99.

101. Plaintiff's right to freedom of speech is protected under the First Amendment to the United States Constitution.

102. Plaintiff's right to freedom of speech is a fundamental right protected under the First Amendment to the United States.

103. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to freedom of speech protected by the First Amendment to the United States Constitution.

104. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions, as interpreted and applied against Plaintiff substantially burden Plaintiff's freedom of speech.

105. Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiff's speech in an arbitrary and capricious manner.

106. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional regulation.

107. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based decisions by allowing standard-less and ad ho discretionary decisions to grant or deny speech and/or literature distribution in public places.

108. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff's from expressing their rights by limiting Plaintiff's expression to the whim of Defendants' Cogburn, Case, Smith and Does determination as to what speech is acceptable.

109. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not the exercise of permissible time, place, and manner restrictions.

110. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not neutral, generally applicable laws.

111. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions serve as an unconstitutional prior restraint on Plaintiff's free speech and free exercise rights.

112. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutionally overbroad restrictions on expressive activity.

113. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are viewpoint-based and/or content-based restrictions on speech and allow future viewpoint-based and/or content-based restrictions on speech.

114. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions suffer from vagueness.

115. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a compelling state interest.

116. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by the regulation.

117. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a significant government interest.

118. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not narrowly tailored restrictions on speech.

119. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not leave open ample alternative channels of communication.

120. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected speech.

121. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by the United States Constitution.

122. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

123. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

124. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

125. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

## COUNT II

**VIOLATION OF THE RIGHT TO PETITION**

**THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

126. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

127. Plaintiff's right to petition is protected under the First Amendment to the United States Constitution.

128. Plaintiff's right to petition is a fundamental right protected under the First Amendment to the United States.

129. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to petition protected by the First Amendment to the United States Constitution.

130. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions, as interpreted and applied against Plaintiff substantially burden Plaintiff's freedom of speech to in his right to petition.

131. Defendants are not uniformly enforcing a regulation Plaintiff's right to petition, but are targeting Plaintiff's right to petition in an arbitrary and capricious manner.

132. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional regulation.

133. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based

decisions by allowing standard-less and *ad ho* discretionary decisions to grant or deny right to petition and speech in open court a public place.

134. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff from expressing his rights by limiting Plaintiff's expression to the whim of Defendants' Cogburn, Case, Smith and Does determination as to what petition, motion, pleading, or content of speech within is acceptable.

135. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not the exercise of permissible time, place, and manner restrictions.

136. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not neutral, generally applicable laws.

137. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions serve as an unconstitutional prior restraint on Plaintiff's free speech, right to petition, due process and equal protection rights.

138. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutionally overbroad restrictions on expressive activity.

139. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are viewpoint-based and/or content-based restrictions on speech through right to petition and allow future viewpoint-based and/or content-based restrictions on speech and right to petition.

140. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions suffer from vagueness.

141. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a compelling state interest.

142. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by the regulation.

143. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a significant government interest.

144. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not narrowly tailored restrictions on speech through right to petition.

145. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not leave open ample alternative channels of communication with the Courts.

146. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected speech and right to petition.

147. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by the United States Constitution.

148. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

149. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

150. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

151. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has

suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

**COUNT III**

**VIOLATION OF THE RIGHT TO DUE PROCESS**
**THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

152. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

153. Plaintiff's right to due process is protected under the Fifth and Fourteenth Amendments to the United States Constitution.

154. Plaintiff's right to free speech, right to petition, and equal protection are fundamental rights protected under the First and Fourteenth Amendments to the United States Constitution.

155. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to due process protected by the Fifth and Fourteenth Amendments to the United States Constitution.

156. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions, as interpreted and applied against Plaintiff substantially burden Plaintiff's freedom of speech, right to petition, and equal protection rights.

157. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions substantially burden Plaintiffs' rights by granting unfettered discretion to Defendants and their agents to deny Plaintiff's freedom of speech, right to petition, and equal protection.

158. Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiff's speech in an arbitrary and capricious manner.

159. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiffs' rights through an unconstitutional viewpoint and/or contend-based regulation.

160. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based decisions by allowing standard-less and *ad hoc* discretionary decisions to grant or deny speech and/or right to petition in open court in public place.

161. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff from expressing his rights by limiting Plaintiff's expression to the whim of Defendants' Cogburn, Case, Smith and Does determination as to what speech and petition is acceptable.

162. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions suffer from vagueness.

163. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected speech and right to petition.

164. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiffs' rights guaranteed by the United States Constitution.

165. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

166. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

167. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

168. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

## COUNT IV

## VIOLATION OF THE RIGHT TO EQUAL PROTECTION THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

169. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

170. Plaintiff's rights to freedom of speech, right to petition, and due process are protected under the United States Constitution.

171. Plaintiff's rights to freedom of speech, right to petition, and due process are fundamental rights protected under the United States Constitution.

172. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to equal protection protected by the Fourteenth Amendment to the United States Constitution.

173. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions, as interpreted and applied against Plaintiff's substantially burden Plaintiff's rights to freedom of speech, right to petition, and due process.

174. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions substantially burden Plaintiff's rights to freedom of speech, right to petition, and due process.

175. Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiff's speech in an arbitrary and capricious manner.

176. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional viewpoint and/or content-based regulation.

177. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based decisions by allowing standard-less and *ad hoc* discretionary decisions to grant or deny speech and/or literature distribution in public places.

178. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff from expressing his rights by limiting Plaintiff's expression

to the whim of Defendants' Cogburn, Case, Smith and Does determination as to what speech or petition is acceptable.

179. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the speech and/or free exercise rights of other persons or groups similarly situated, but burden Plaintiff's rights through unconstitutional prior restraint and viewpoint and/or content-based regulations.

180. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions targeted Plaintiff's right to petition for disparate treatment and set up a system of individualized exemptions by granting other citizens their right to speech, petition and access to the Courts, yet specifically and discriminatorily targeting Plaintiff's speech and petitions.

181. Other groups and persons similarly situated to Plaintiff's expressing grievous, injustices or possible violations of law were not targeted for disparate treatment under Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions.

182. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected speech through right to petition.

183. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by the United States Constitution.

184. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

185. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

186. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

187. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

## COUNT V

## VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH ARTICLE 1, § 14, OF THE NORTH CAROLINA CONSTITUTION

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

188. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

189. Plaintiff's right to freedom of speech is a fundamental right protected under Article 1, § 14, of the North Carolina Constitution.

190. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to freedom of speech protected by Article 1, § 14, of the North Carolina Constitution.

191. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions, as interpreted and applied against Plaintiff substantially burden Plaintiff's freedom of speech.

192. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions substantially burden Plaintiff's right to free speech by granting unfettered discretion to Defendants and their agents to deny Plaintiff's free speech.

193. Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiff's right free speech in an arbitrary and capricious manner.

194. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff rights through an unconstitutional viewpoint and/or content-based regulation.

195. Defendant's polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based decisions by allowing standard-less *ad hoc* discretionary decisions to grant or deny access to an open court.

196. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff from expressing his rights by limiting Plaintiff's expression to the whim of Defendants' Cogburn, Case, Smith and Does determination as speech is acceptable.

197. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not neutral, generally applicable laws.

198. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions served as an unconstitutional prior restraint on Plaintiff's free speech and free exercise rights.

199. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutionally overbroad restrictions on Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are viewpoint-based and/or content-based

restrictions on speech and allow future viewpoint-based and/or content-based restrictions on speech.

200. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutionally overbroad restrictions on expressive activity.

201. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions suffer from vagueness.

202. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a compelling state interest.

203. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by the regulations.

204. Defendants polices, customs, practices and actions are viewpoint-based and/or content-based restrictions on speech and allow future viewpoint-based and/or content-based restrictions on speech.

205. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a significant government interest.

206. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not narrowly tailored restrictions on free speech.

207. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected free speech.

208. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by Article 1, § 14, of the North Carolina Constitution.

209. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

210. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

211. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

212. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

**COUNT VI**

**VIOLATION OF THE RIGHT TO COURT SHALL BE OPEN ARTICLE 1, § 18, OF THE NORTH CAROLINA CONSTITUTION**

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

213. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

214. Plaintiff's right to address an injury done him, his land, good, person, and reputation, through the courts, are protected by Article, 1, § 18, of the North Carolina Constitution.

215. Plaintiff's right to an open court is a fundamental right protected under Article 1, § 18, of the North Carolina Constitution.

216. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to free exercise of an open court protected by Article 1, § 18, of the North Carolina Constitution.

217. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions, as interpreted and applied against Plaintiff substantially burden Plaintiff's free exercise of his right to access to an open court.

218. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions substantially burden Plaintiff's right to free exercise of access to an open court by granting unfettered discretion to Defendants and their agents to deny Plaintiff's access to the court.

219. Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiff's right to access to the court in an arbitrary and capricious manner.

220. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional viewpoint and/or content-based regulation.

221. Defendant's polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based decisions by allowing standard-less ad hoc discretionary decisions to grant or deny access to an open court.

222. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff from expressing his rights by limiting Plaintiff's expression to the whim of Defendants' Cogburn, Case, Smith and Does determination as to whether access to the court is acceptable.

223. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not neutral, generally applicable laws.

224. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions served as an unconstitutional prior restraint on Plaintiff's free speech and free exercise rights.

225. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutionally overbroad restrictions on expressive activity.

226. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are viewpoint-based and/or content-based restrictions on speech and allow future viewpoint-based and/or content-based restrictions on speech.

227. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions suffer from vagueness.

228. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a compelling state interest.

229. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by the regulations.

230. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not supported by a significant government interest.

231. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are not narrowly tailored restrictions on open access to the court.

232. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected access to open court.

233. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by Article 1, § 18, of the North Carolina Constitution.

234. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

235. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

236. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

237. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

## COUNT VII

### VIOLATION OF THE RIGHT TO EQUAL PROTECTION OF THE LAWS ARTICLE 1, § 19, OF THE NORTH CAROLINA CONSTITUTION

*Against Defendants' Cogburn, Case, Smith and Does 1 through 3*

238. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

239. Plaintiff's rights to freedom of speech, right to petition, and due process are protected under Article 1, § 19, of the North Carolina Constitution.

240. Plaintiff's rights to freedom of speech, right to petition, and due process are fundamental rights protected under Article 1, § 19, of the North Carolina Constitution.

241. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are unconstitutional abridgements of Plaintiff's affirmative right to equal protection protected by article 1, § 19, of the North Carolina Constitution.

242. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions substantially burden Plaintiff's rights by granting unfettered discretion to Defendants and their agents to deny Plaintiff's rights to freedom of speech, right to petition, and due process.

243. Defendants are not uniformly enforcing a regulation on speech, but are targeting Plaintiff's speech in an arbitrary and capricious manner.

244. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional viewpoint and/or content-based regulation.

245. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions constitute a violation of Plaintiff's rights because they foster viewpoint and content-based

decisions by allowing standard-less and *ad hoc* discretionary decisions to grant or deny speech through petition in open court in public place.

246. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions inequitably prohibit Plaintiff form expressing his rights by limiting Plaintiff's expression to the whim of Defendants' Cogburn, Case, Smith and Does determination as to what speech and/or petition is acceptable.

247. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions do not fetter the speech or right to petition of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional prior restraint and viewpoint and/or content-based regulations.

248. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions targeted Plaintiff's right to petition for disparate treatment and set up a system of individualized exemptions by granting others their right to speech and/or petition by specifically and discriminatorily targeting Plaintiff's right to petition.

249. Other groups and persons similarly situated to Plaintiff were not targeted for disparate treatment under Defendant's Policies, polices, customs, practices and actions.

250. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions are irrational and unreasonable and impose irrational and unjustifiable restrictions on constitutionally protected speech through petition.

251. Defendants' Cogburn, Case, Smith and Does polices, customs, practices and actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by Article 1, § 19, of the North Carolina constitution.

252. The violations of Plaintiff's constitutional rights have caused, and will continue to cause, Plaintiff to suffer hardship and actual and impending irreparable injury.

253. Plaintiff has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

254. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

255. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

## COUNT VIII

## VIOLATION OF THE RIGHT TO PRIVACY

## THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

*Against Defendant Alleman*

256. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

257. Plaintiff's right to privacy is protected under Fourteenth Amendment to the United States Constitution.

258. Plaintiff's right to privacy is a fundamental right protected under Fourteenth Amendment to the United States.

259. Defendant Alleman, acting as guardian ad litem appointed by the State Court was granted specifics powers under North Carolina General Statue § 35A, specifically:

260. "An attorney who is appointed as the guardian ad litem for an allegedly incapacitated respondent under G.S. 35A-1107 does not have any authority to act as the respondent's guardian with respect to matters involving the respondent's medical care or the respondent's property."

261. "G.S. 35A-1107(b) requires an attorney who is appointed to represent an allegedly incapacitated respondent to personally visit the respondent as soon as possible following the attorney's appointment; make every reasonable effort to determine the respondent's wishes with respect to the guardianship proceeding; and present the respondent's express wishes to the court at all relevant stages of the proceeding."

262. Defendant Alleman, required by state law to personally visit the respondent make no effort to do so.

263. Defendant Alleman required by state law to make every reasonable effort to determine the Plaintiff's wishes with respect to the guardianship proceeding and present the Plaintiff's express wishes to the court, not only did not ask the Plaintiff what his wishes were, but present her <u>own wishes</u> to the court.

264. Defendant Alleman positioned herself in an adversary position with the Plaintiff, not working in his best interest, but against his best interest.

265. The North Carolina State Bar's ethics committee recently ruled that a lawyer who is appointed under G.S. 35A-1107 may be acting as the respondent's attorney and guardian ad litem in cases in which the respondent <u>has not retained counsel</u>, and if this is so, a lawyer who is

appointed as the guardian ad litem for an unrepresented respondent in a guardianship proceeding is subject to the Rules of Professional Conduct that govern client-lawyer relationships.

266. Defendant Alleman was fully aware the Plaintiff was not represented by counsel and that she was in fact in a client-lawyer relationship. In fact, Defendant Alleman had the Plaintiff sign a waiver of attorney-client privileges in 2003 involving this same guardianship in which Defendant Alleman was seeking permission to speak with certain individuals regarding the Plaintiff's medical condition.

267. When a lawyer has an attorney-client relationship with a client, the RPC generally require the lawyer to act, within the bounds of law and insofar as possible, as a "zealous advocate" for her client. The official comments to Rule 1.3 of the North Carolina State Bar's Revised Rules of Professional Conduct require a lawyer to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." In representing a client, a lawyer is required to ***"abide by a client's decisions concerning the objectives of representation and . . . consult with the client as to the means by which they are to be pursued."***

268. Defendant Alleman engaged in conduct in ex parte communications with not only the other Defendants' but also with Superior Court Judge Sharron Barnett in an attempt build a defense for the Defendants' by attempting to unlawfully influence a judicial official.

269. Defendant Alleman further attempt to unlawful influence Judge Sharron Barnett on December 6, 2011 during an official court hearing by testifying with false, and misleading evidence not support by any factual evidence presented Judge Barnett

270. Defendant Alleman conduct was in direct violation to (Rule 3.4) of the North Carolina State Bar's Revised Rules of Professional Conduct, but (Rule 3.5) as well since she was

being dishonest, deceitful in misrepresentation of facts thereby committing fraud upon the Court which was prejudicial to the administration of justice.

271. Defendant Alleman had an ethical and professional obligation to protect the Plaintiff's confidences and secrets and was prohibited from revealing information about the Plaintiff acquired during the attorney-client relationship unless the Plaintiff gives informed consent to the disclosure or disclosure as authorized under the North Carolina Revised Rules of Professional Conduct.

272. Defendant Alleman, who did not have the Plaintiff's consent, made numerous statements to individuals not privy to such confidential information she obtained from Plaintiff in the course there an attorney-client relationship, is an effort to disparage the Plaintiff and poison any objectivity these individuals would have had had Defendant Alleman not willfully, wantonly, maliciously and with deliberate indifference release such confidential information.

273. Defendant Alleman, who did not have the Plaintiff's consent, obtained some of the Plaintiff's confidential medical records in direct violation of Federal and States laws for the sole purpose to disparage the Plaintiff to others and influence a judicial official and she did such willfully, wantonly, maliciously and with deliberate indifference for the Plaintiff's right to privacy violated Plaintiff's autonomy.

274. Defendant Alleman engaged in an unconstitutional abridgement of Plaintiff's affirmative right to privacy protected by the Fourteenth Amendment to the United States Constitution.

275. Defendant Alleman actions, as interpreted and applied against Plaintiff substantially deprived Plaintiff of federally protected rights by disclosure of personal matters and

in the interest in independence and making certain kinds of important decisions and thereby violated Plaintiff's confidentiality and autonomy of privacy.

276. Defendant Alleman specifically targeted the Plaintiff in an arbitrary and capricious manner.

277. Defendant Alleman actions do not fetter the rights of other persons or groups similarly situated, but burden Plaintiff's rights through an unconstitutional deprivation of Plaintiff right to privacy.

278. Defendant Alleman actions serve as an unconstitutional violation of Plaintiff's right to privacy.

279. Defendant Alleman actions are not supported by a compelling state interest.

280. Defendant Alleman actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by depriving Plaintiff of his right to privacy.

281. Defendant Alleman actions are not supported by a significant government interest.

282. Defendant Alleman actions unconstitutionally chill and abridge Plaintiff's rights guaranteed by the United States Constitution.

283. The violations of Plaintiff's constitutional rights have caused, and will continue to cause; Plaintiff to suffer hardship and actual and impending irreparable injury.

284. Plaintiff's has no adequate remedy at law at this time to correct the continuous deprivations of his most cherished constitutional liberties.

285. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

286. As a direct and proximate cause of Defendants negligence and intentional acts or omissions, resulted in Plaintiff's constitutional and civil rights to be violated. Plaintiff has suffered, and continues to suffer by being deprived of his right to life, liberty and the pursuit of happiness.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested.

## COUNT VIII

## NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Against All Defendants*

287. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 99.

288. Plaintiff's rights to freedom of speech, right to petition, due process and equal protection are protected under the Constitution of the United States and the North Carolina Constitution.

289. Defendants' through their polices, customs, practices and/or actions to abridge the Plaintiff's constitutional and civil rights did so with the intent to inflict emotional distress on Plaintiff.

290. Defendants' conduct was extreme and outrageous and is what cause the Plaintiff to suffer from great emotional distress. The Defendants' willfully, wantonly, maliciously and with deliberate indifference sought to cause emotional distress on Plaintiff.

291. The negligent and intentional acts or omissions of Defendants' directly and proximately cause the injury to Plaintiff.

292. As a direct and proximate cause of Defendants negligence and intentional acts, which resulted in causing of the Plaintiff's constitutional and civil rights to be violated, he has suffered great emotional distress.

293. Plaintiff has suffered and continues to suffer hardship and actual irreparable emotional injury.

294. Plaintiff has no adequate remedy at law at this time to correct the continuous negligent and intentional inflict emotional distress.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

**COUNT IX**

**INJUNCTIVE RELIEF**

295. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs number 1 through 263.

296. Defendants' Cogburn, Case, Smith and Does have adopted and enforced their Policies, customs, practices, acts and omission under color of State law hostile to Plaintiff's rights protected under the United States Constitution and the North Carolina Constitution.

297. Plaintiff has a concrete desire to continue to petition the State Court his grievous regarding his guardianship have been resolved.

298. There is a substantial likelihood that Plaintiff will prevail on the merits in this case.

299. The threat of prior restraint under and through the Defendants' Cogburn, Case, Smith and Does, polices, customs, practices and actions is both great and immediate.

300. The harm to Plaintiff outweighs any subjective harm to Defendants.

301. The public interest is benefitted when constitutional and civil rights are protected by the Courts.

302. Plaintiff has no adequate remedy at law at this time to correct the continuing deprivations of his most cherished constitutional liberties.

303. Plaintiff wishes to continue to petition the State Court to address his grievances as he has in the past, but he is fearful of Defendants' Cogburn, Case, Smith, and Does future adverse actions against Plaintiff for exercising his protected constitutional and civil rights.

304. The threat of Defendants' future adverse actions against Plaintiff, as evidenced by the prior application and interpretation against Plaintiff, is both great and immediate.

305. Plaintiff is fearful Defendants will attempt to interfere with Plaintiff's exercise and enjoyment of his rights in the future through threats, intimidation, and coercion.

306. Unless restrained, and enjoined by this Court, Defendants will continue to harass, detain, and threaten Plaintiff for exercising his constitutional rights.

WHEREFORE, Plaintiff respectfully prays that the Court will grant the relief requested herein.

## <u>COUNT X</u>

## DECLARATORY RELIEF

307. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs number 1 through 263.

308. An actual controversy has arisen between Plaintiff and Defendants' Cogburn, Case, Smith, and Does in that Plaintiff contends that, as a direct and proximate result of Defendants' Cogburn, Case, Smith, and Does policies, customs, practices, acts and omission under color of State law, he has been harmed in that Defendants' Cogburn, Case, Smith, and Does actions are hostile to a reasonable interpretation of the law as it pertains to the right to free speech, right to petition, due process and equal protection and the Defendants' Cogburn, Case,

Smith, and Does conduct and actions were not required by, nor are they supported by, North Carolina law or the United States Constitution or the North Carolina Constitution.

309. An actual controversy has arisen between Plaintiff and Defendant Alleman in that Plaintiff contends that, as a direct and proximate result of Defendant Alleman practices, acts and omission he has been harmed in that Defendant Alleman actions are hostile to a reasonable interpretation of the law as it pertains to the right to privacy and Defendant Alleman's conduct and actions were not required by, nor are they supported by, North Carolina law or the United States Constitution or the North Carolina Constitution.

310. Defendants have adopted and have engaged in practices, customs, acts and omission under color of State law, hostile to Plaintiff's rights protected under the United States Constitution and the North Carolina Constitution.

311. Defendants have adopted and have engaged in practices, customs, acts and omissions under color of State law, hostile to Plaintiff's rights protected under the United States Constitution and the North Carolina Constitution.

312. Plaintiff wishes to continue to petition the State Court regarding his grievances as it pertains to his guardianship proceeding, but he is fearful of Defendants' future adverse actions against Plaintiff for exercising his protected constitutional and civil rights.

313. Plaintiff desires a judicial determination of the rights and duties of the respective parties under the United States Constitution and the North Carolina Constitution, and a judicial declaration that Plaintiff's right to petition the courts, is protected by the United States Constitution and the North Carolina Constitution.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. The Plaintiff has not filed other lawsuits in any state or federal court that deal with the same facts that are involved in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. That this court issue a temporary restraining order restraining and enjoining Defendants, and each of them, their agents, employees, representatives, and all persons acting in concert, or participating with them, from engaging directly or indirectly in any act that would result in the harassment, and/or issues of disparaging remarks, statements or utterances, pertaining to the Plaintiff and/or Plaintiff's family, medical professional who have and are treating the Plaintiff and any other professional who has or is attempting to assist the Plaintiff petition the State Court regarding matters pertaining to Plaintiff's guardianship;

2. That this court issue a temporary restraining order restraining and enjoining Defendants, and each of them, their agents, employees, representatives, and all persons acting in concert, or participating with them, from releasing any confidential or privileged documents, including but not limited medical records pertaining to the Plaintiff and/or Plaintiff's guardianship proceeding with written consent from Plaintiff or a valid Court Order allow the release of such confidential and/or privileged records and/or communications;

3. That this Court render a Declaratory Judgment declaring Defendant Cogburn, Case, Smith and Does have violated North Carolina General Statue § 35A, and have

engaged in practices, customs, acts and omissions under color of State law, hostile to Plaintiff's rights such that engaged in practices, customs, acts and omissions as an invalid and unconstitutional regulation of North Carolina General Statue § 35A, the Constitution of the United States and the North Carolina Constitution in violation of Plaintiff's rights; That this Court award to Plaintiff general, exemplary, punitive and/or nominal damages in an amount to be proven;

4. That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

5. That this court retain jurisdiction of this matter for the purpose of enforcing this Court's orders;

6. That this court award Plaintiff the reasonable costs and expenses of this action, including attorney's fees, should Plaintiff retain counsel, in accordance with 42 U.S.C. § 1988 and other applicable rule or law; and,

7. Award Plaintiff compensatory damages against Defendants as to all causes of action in an amount to be proven at trial, including but not limited to pain and suffering of the Plaintiff;

8. Award Plaintiff punitive damages for his civil rights claims against Defendants in an amount to be proven at trial;

9. Award Plaintiff damages for pain and suffering;

10. Grant Plaintiff a trial by jury; and

11. That this court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted this 8th day of December, 2011.

/s/ ______________________________

Todd Wilson Short
Pro se
53 Grindstaff Drive
Asheville, North Carolina 28803
Telephone (828) 225-5928
Fax (828) 475-1333
Email: toddwshort@yahoo.com

**DECLARATION**

The undersigned declares under penalty of perjury under the laws of the United States that he is the Plaintiff is the above action, that he has read the above amended complaint and that the information contained therein is true and correct. 28 U.S.C. §1746; 18 U.S.C. §1621.

Dated: December 8, 2011

Todd Wilson Short
Pro se
53 Grindstaff Drive
Asheville, North Carolina 28803
Telephone (828) 225-5928
Fax (828) 475-1333
Email: toddwshort@yahoo.com

## CERTIFICATE OF SERVICE

I declare that I am over the age of eighteen (18) and not a part to this action. My address is 53 Grindstaff Drive, Asheville, North Carolina 28803.

On December 8, 2011, I served the following document described as **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE** AND **Declaratory RELIEF FOR CIVIL RIGHTS VIOLATIONS; DEMAND FOR JURY TRIAL** on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope with postage thereon fully prepaid, placed for collection and mailing on this date in the united States mail at Asheville, North Carolina.

Addressed too:

Grady L. Balentine , Jr. for Steven D. Cogburn
N.C. Department of Justice
North Carolina Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001
919-716-6867
Fax: 919-716-6755
Email: gbalentine@ncdoj.gov

Grady L. Balentine , Jr. for Tammy C. Case
N.C. Department of Justice
North Carolina Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001
919-716-6867
Fax: 919-716-6755
Email: gbalentine@ncdoj.gov

Grady L. Balentine , Jr. for Susan D. Smith
N.C. Department of Justice
North Carolina Department of Justice
9001 Mail Service Center
Raleigh, NC 27699-9001
919-716-6867
Fax: 919-716-6755
Email: gbalentine@ncdoj.gov

Mailed to the 8th of December, 2011

______________________
Robyn Morris
53 Grindstaff Drive
Asheville, North Carolina 28803
(828) 545-8198